# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 23-cr-315 (SRN/DTS) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| Israel Maldonado-Benitez (1), | |
| Defendant. | |

Defendant Israel Maldonado-Benitez is charged with one count of conspiracy to distribute methamphetamine in violation of Title 21 U.S.C. § 841(a)(1), § (b)(1)(A), and § 846. Maldonado-Benitez moves to suppress post-arrest statements he made to law enforcement through a Spanish-language interpreter, alleging that flaws in the translation prevented him from knowingly waiving his rights. Because the interpreter accurately conveyed the substance of law enforcement's *Miranda* warning, the Court recommends Maldonado-Benitez's motion to suppress be denied.

## FINDINGS OF FACT

As recounted in this Court's previously issued report and recommendation, Agents with the U.S. Drug Enforcement Agency (DEA) seized approximately 100 kilograms of methamphetamine in Houston, Texas, destined for St. Paul, Minnesota. Report & Recommendation at 1, Dkt. No. 67. As part of a DEA investigation, undercover agents arranged to transport approximately 100 kilograms of fake methamphetamine, equipped with tracking devices, to the intended recipient in Minnesota. *Id.*

On June 22, 2022, an undercover DEA agent transferred four duffel bags of fake methamphetamine to Defendants Maldonado-Benitez and Violante-Lujano at a truck stop

in Lakeville, Minnesota. *Id.* at 1–2. The DEA notified Minnesota State Trooper Anthony Mains about the encounter. *Id.* at 2. Trooper Mains identified the van and pulled it over. *Id.* During the traffic stop, Trooper Mains found the four duffel bags of fake methamphetamine. *Id.* at 2–4. Officers then took Maldonado-Benitez and Violante-Lujano into custody, transporting them to the Dakota County Jail. Def.'s Ex. B, Dkt. No. 112-2 (Trooper Mains Vid.).[1]

Maldonado-Benitez speaks only Spanish. Gov.'s Resp. at 3, Dkt. No. 115; Def.'s Mot. to Suppress Statement at 2–4, Dkt. No. 112 (Def.'s Suppression Mot.); *see generally* Trooper Mains Vid. After arriving at the jail, Trooper Mains questioned Maldonado-Benitez using a dial-in English-to-Spanish translation service. Through the interpreter, Trooper Mains issued Maldonado-Benitez the following *Miranda* warning:

| | |
|---|---|
| **MV1:** All right. You have the right to remain silent. [1:31:40] | **MV1:** All right. You have the right to remain silent. [1:31:40] |
| **FV:** *Tiene el derecho a permanecer en silencio.* | **FV:** *You have the right to remain silent.* |
| **MV1:** Anything you say can and will be used against you in a court of law. | **MV1:** Anything you say can and will be used against you in a court of law. |
| **FV:** *Todo lo que diga puede y será usado en su contra en un juicio. O en un juzgado.* | **FV:** *Everything you say can and will be used against you at trial. Or in court.* |
| **MV1:** You have the right to an attorney. | **MV1:** You have the right to an attorney. |
| **FV:** *Tiene el derecho a un abogado.* | **FV:** *You have the right to an attorney.* |
| **MV1:** If you cannot afford an attorney, one will be provided for you without cost. | **MV1:** If you cannot afford an attorney, one will be provided for you without cost. |
| **FV:** *Si no puede pagar un abogado, se le va a ofrecer uno sin costo.* | **FV:** *If you cannot afford an attorney, one will be offered to you without cost.* |

---

[1] Maldonado-Benitez's Exhibit B is Trooper Mains's body-camera footage of the incident, including the post-arrest questioning. *See* Trooper Mains Vid.

2

| | |
|---|---|
| **MV1:** Do you understand the rights I have just read to you?<br><br>**FV:** ¿Entiende usted los derechos que le acabo de leer?<br><br>**MV2:** Sí.<br><br>**MV1:** With those rights (in mind),<br><br>**FV:** (Yes.)<br><br>**MV1:** would you like to answer some questions for me?<br><br>**FV:** ¿Le gustaría contestar algunas preguntas para mí?<br><br>**MV2:** Dígame las preguntas.<br><br>**FV:** Tell me.<br><br>**MV1:** Do you want to answer some questions regarding what happened today? | **MV1:** Do you understand the rights I have just read to you?<br><br>**FV:** Do you understand the rights I have just read to you?<br><br>**MV2:** Yes.<br><br>**MV1:** With those rights in mind,<br><br>**FV:** Yes.<br><br>**MV1:** would you like to answer some questions for me?<br><br>**FV:** Would you like to answer some questions for me?<br><br>**MV2:** Tell me the questions.<br><br>**FV:** Tell me.<br><br>**MV1:** Do you want to answer some questions regarding what happened today? |

Def.'s Ex. A at 3, Dkt. No. 112-1.[2] Trooper Mains then proceeded to ask Maldonado-Benitez a series of questions regarding his involvement in the alleged attempted methamphetamine acquisition. *Id.* at 4–11. When asked, "Where did what they found in your vehicle come from, the narcotics," Maldonado-Benitez responded, "We—we had got to pick it, uh, that, up." *Id.* at 5–6. Later in the interview, Maldonado-Benitez told Trooper Mains that he had never opened the duffel bags, did not know what was inside the bags, and was not being paid to transport the bags. *Id.* at 7–10. According to the Government, body-camera footage captured an undercover officer unzipping one of the bags and

---

[2] The statements made in Spanish, recorded by Trooper Mains's body-camera, were translated from Spanish into English by Federally Certified Spanish Court interpreter, Marianne McEvoy. Def.'s Ex. A at 1. MV1 is Trooper Mains; MV2 is Maldonado-Benitez; and FV is the interpreter. *Id.*

3

showing Maldonado-Benitez the fake methamphetamine. Gov.'s Resp. at 6. After approximately 15 minutes, Trooper Mains ended the interview. Def.'s Ex. A at 2, 11.

The following day, law enforcement approached Maldonado-Benitez to question him again. Def.'s Suppression Mot. at 4. At that time, Maldonado-Benitez told law enforcement that he did not wish to speak with them without an attorney present. *Id.* at 4–5. Maldonado-Benitez now moves to suppress the statements he made during his post-arrest questioning. Because he does not request the suppression of specific statements, *see generally* Def.'s Suppression Mot., it appears that Maldonado-Benitez seeks to suppress all of his statements made during the fifteen-minute interview.

## CONCLUSIONS OF LAW

A criminal suspect's waiver of constitutional rights, including the Fifth Amendment's right against self-incrimination, "must be knowing, intelligent, and voluntary." *United States v. Castro-Higuero*, 473 F.3d 880, 885 (8th Cir. 2007). For a suspect's waiver to be knowing and intelligent, "the suspect must have waived his rights with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011) (quotation omitted). For a suspect's waiver to be voluntary, it must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). As a procedural safeguard, "*Miranda* requires that law enforcement agents provide certain prescribed warnings before conducting an interrogation of a suspect who is in custody." *United States v. New*, 491 F.3d 369, 373 (8th Cir. 2007) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). These prescribed warnings include, "[(1)] that he has the right to remain silent, [(2)] that

4

anything he says can be used against him in a court of law, [(3)] that he has the right to the presence of an attorney, and [(4)] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda*, 384 U.S. at 449.

"If a suspect makes a knowing and voluntary waiver of his Fifth Amendment rights after receiving *Miranda* warnings, his inculpatory statements are admissible at trial." *United States v. Rooney*, 63 F.4th 1160, 1167 (8th Cir. 2023). Although "[t]he government has the burden of proving the validity of the *Miranda* waiver by a preponderance of the evidence," *United States v. Haggard,* 368 F.3d 1020, 1024 (8th Cir. 2004), "[w]here the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent," *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010); *see also Berkemer v. McCarty*, 468 U.S. 420, 434 n.20 (1984) ("[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare.").

Maldonado-Benitez contends that Trooper Mains's *Miranda* warning was defective because of a "key" omission by the interpreter. Def.'s Suppression Mot. at 6. Although Maldonado-Benitez concedes that he "did hear his rights and they were ready correctly," *id.* at 6, he argues that the interpreter's omission of the phrase "with those rights in mind," instead only asking "would you like to answer some questions for me," Def.'s Ex. A at 3, prevented Maldonado-Benitez from knowingly and intelligently waiving his rights. Def.'s Mot. at 6–7. This line of attack is not persuasive.

As an initial matter, law enforcement may provide a *Miranda* warning through an interpreter. *Castro-Higuero*, 473 F.3d at 886. When a *Miranda* warning is provided

5

through an interpreter, the question is whether the interpreter accurately translated the substance of the *Miranda* warning. *United States v. Ponce*, No. 12-cr-115(3), 2012 WL 6771394, at *10–12 (D. Minn. Dec. 10, 2012), *R. & R. adopted by* 2013 WL 64607 (D. Minn. Jan. 4, 2013). Here, Maldonado-Benitez concedes that the interpreter conveyed the substance of his constitutional rights. When Trooper Mains asked if Maldonado-Benitez understood those rights, he responded that he did. Def.'s Ex. A at 3. Therefore, the *Miranda* warning was sufficient, and Maldonado-Benitez knowingly waived his rights when answering Trooper Mains's questions. *See Thai v. Mapes*, 412 F.3d 970, 977 (8th Cir. 2005) ("[T]he appropriate inquiry is whether the warning that [Maldonado-Benitez] received reasonably conveyed his constitutional rights as required by *Miranda*.").

That the interpreter omitted the phrase "with those rights in mind" does not change anything. Maldonado-Benitez identifies no case finding that such a non-substantive omission renders a *Miranda* warning insufficient. To the contrary, the Supreme Court has repeatedly emphasized that "no talismanic incantation" is required to satisfy *Miranda*. *California v. Prysock*, 453 U.S. 355, 359 (1981); *Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) ("We have never insisted that *Miranda* warnings be given in the exact form described in that decision."); *Missouri v. Seibert,* 542 U.S. 600, 611 (2004); *Florida v. Powell*, 559 U.S. 50, 60 (2010) ("[T]his Court has not dictated the words in which the essential information must be conveyed."). Substance, not form, is what matters. *See Powell*, 559 U.S. at 63. Moreover, by reading Maldonado-Benitez his rights immediately before questioning Maldonado-Benitez regarding his involvement in the alleged attempted methamphetamine acquisition, the purpose of Trooper Mains's *Miranda* warning was readily apparent.

6

Maldonado-Benitez's remaining arguments to the contrary are not persuasive. First, Maldonado-Benitez argues that his "subsequent assertion of his right to counsel, which was delivered the following day after a proper Miranda Warning[,]" supports the conclusion that Maldonado-Benitez did not knowingly waive his rights. Def.'s Reply at 2–3, Dkt. No. 124 That Maldonado-Benitez subsequently invoked his rights does not demonstrate he did not understand them during Trooper Mains's questioning. Taking the accurately translated *Miranda* warning in conjunction with Maldonado's affirmative representation that he understood his rights, the Court concludes that Maldonado-Benitez reconsidered his decision to speak with law enforcement after Trooper Mains's questioning.

Second, Maldonado-Benitez claims that "confusion created by misinterpretation of the name of [Lakeville] and other [translation] errors" impacted Maldonado-Benitez's ability to knowingly waive his rights. Def.'s Reply at 3. But how so is not clear. Trooper Mains was clearly questioning Maldonado-Benitez regarding the fake methamphetamine. *See, e.g.,* Def.'s Ex. A at 5 ("Where did what they found in your vehicle come from, the narcotics?"). Having reviewed the transcript, there is no reason to believe Maldonado-Benitez did not understand Trooper Mains's questions, despite the smattering of translation errors. *See generally id.*

Third and finally, Maldonado-Benitez argues the Government "has not addressed the clear lack of sophistication." Def.'s Reply at 3. As "a marginally employed roofer," Maldonado-Benitez argues that he "cannot be considered to have made a knowing and intelligent waiver." *Id.* But this argument does not comport with Maldonado-Benitez's contemporaneous representation to law enforcement that he understood his rights. Nor

7

does Maldonado-Benitez claim, for example, that he felt coerced to answer yes. Absent some concrete basis to reject Maldonado-Benitez's contemporaneous statement, Maldonado-Benitez's lack-of-sophistication argument does not move the needle.

In summary, because the interpreter accurately conveyed the substance of Maldonado-Benitez's rights as required by *Miranda*, Maldonado-Benitez told law enforcement that he understood his rights, and then proceeded to give uncoerced answers to Trooper Mains's questions,[3] the Court recommends the motion to suppress be denied.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS that: Defendant's Motion to Suppress Statement (Dkt. No. 112) be DENIED.

Dated: February 28, 2025             __s/ David T. Schultz_____
                                                           DAVID T. SCHULTZ
                                                           U.S. Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

---

[3] Having reviewed the body-camera footage, there is nothing to indicate that Trooper Mains coerced Maldonado-Benitez into answering his questions. Nor has Maldonado-Benitez identified any circumstances that might render his answers to Trooper Mains's questioning involuntary.